PROB 12C
(7/93)

# United States District Court
### for the
# District of Alaska

### Supplemental Petition for Warrant or Summons for Offender Under Probation

Name of Offender: Tara Shae Stuart

Case Number: 3:05-CR-00090-JWS
3:03-cr-171-16 JMF

Sentencing Judicial Officer:     John W. Sedwick, Chief U.S. District Court Judge

Date of Original Sentence:       February 24, 2006

Original Offense:                Escape in violation of 18 U.S.C. § 751(a)

Original Sentence:               5 years probation

Date Supervision Commenced:      July 31, 2006

Asst. U.S. Attorney: Stephan Collins          Defense Attorney: Richard Curtner

**RECEIVED**

MAR - 9 2007

**CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.**

---

## PETITIONING THE COURT

[X]   To issue a warrant
[  ]   To issue a summons

The probation officer believes that the offender has violated the following condition(s) of supervised release:

| Violation Number | Nature of Noncompliance |
|---|---|
| 7 | The defendant has violated the Standard Condition of Supervision 10, "The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer," in that on or about March 8, 2007, the defendant failed to permit the probation officer to visit her at 2895 Mendenhall Loop, #68, Juneau, Alaska. This violation is a Grade C violation. |
| 8 | The defendant has violated the Standard Condition of Supervision 9, "The defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer," in that on or about March 8, 2007, the offender was associating with Ramona Wigg, a convicted felon, without permission of her probation officer. This violation is a Grade C violation. |
| 9 | The defendant has violated the Standard Condition of Supervision 3, "the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer," in that on or about February 9, 2007, the probation officer instructed the defendant not to associate with Ramona Wigg, and on or about March 8, 2007, the offender was associating with Ramona Wigg. This violation is a Grade C violation. |

*Petition for Warrant or Summons*
| | | |
|---|---|---|
| *Name of Offender* | : | *Tara Shae Stuart* |
| *Case Number* | : | *A03-0171-16-CR (JMF)/3:05-CR-00090-(JWS)* |

U.S. Probation Officer Recommendation:

The term of supervised release should be:

[X]     Revoked
[ ]     Extended for _____ year(s), for a total term of _____ years.

[ ]     The conditions of supervised release should be modified as follows:


Respectfully submitted,

**REDACTED SIGNATURE**

*for* Mary Frances Barnes
U.S. Probation/Pretrial Services Officer
Date: March 9, 2007

Approved by:

**REDACTED SIGNATURE**

Eric D. Odegard
Supervising U.S. Probation Officer

THE COURT ORDERS

[ ]/   *The WARRANT FOR ARREST be delivered to the U.S. Marshal's Service; and the petition,*
      *probation officer's declaration, and a copy of the warrant shall be sealed in the Clerk's file and*
      *disclosed only to the U.S. Attorney for their official use, until the arrest of the offender.* The
      petition for probation revocation is referred to the Magistrate Judge for initial appearance only.

[ ]     The issuance of a summons. The petition for probation revocation is referred to the Magistrate
        Judge for initial appearance only.

[ ]     Other:


**REDACTED SIGNATURE**

John W. Sedwick
Chief U.S. District Court Judge

_3/9/07_
Date

*Petition for Warrant or Summons*

| | | |
|---|---|---|
| *Name of Offender* | : | *Tara Shae Stuart* |
| *Case Number* | : | *A03-0171-16-CR (JMF)/3:05-CR-00090-(JWS)* |

**Supervised Release Cases:** Pursuant to 18.U.S.C. § 3401(I), the sentencing District Court may designate a Magistrate Judge to conduct hearings to modify, revoke, or terminate supervised release, including evidentiary hearings, and to submit to the Court proposed findings of facts and recommendations, including disposition recommendations.

**Probation Cases:** Pursuant to *United States v. Frank F. Colacurcio,* 84 F.3d 326, a Magistrate Judge has the authority to conduct a probation revocation hearing **only if** the following three conditions are satisfied: (1) the defendant's probation was imposed for a misdemeanor; (2) the defendant consented to trial, judgment, and sentence by a Magistrate Judge; and (3) the defendant initially was sentenced by a Magistrate Judge. Therefore, a District Court **may not** designate a Magistrate Judge to conduct revocation hearings on probation cases where a District Court was the sentencing Court.

# United States District Court
for the
## DISTRICT OF ALASKA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case Number: 3:03-CR-0171-16 JMF |
| | ) | 3:05-CR-00090-JWS |
| vs. | ) | DECLARATION IN SUPPORT OF PETITION |
| | ) | |
| | ) | |
| Tara Shae Stuart | ) | |

I, Mary Frances Barnes, am the U.S. Probation Officer assigned to supervise the Court-ordered conditions of Supervised Release and Probation for Tara Shae Stuart, and in that capacity declare as follows:

On June 7, 2004, Tara Stuart was convicted in case A03-0171-16-CR (JMF),of Conspiracy in violation of 21 U.S.C. 846 & 841(b)(1)(A)(B & C). The defendant was sentenced to 33 months imprisonment and three years of supervised release.

On June 9, 2005, prior to release from the custody of the U.S. Bureau of Prisons, the defendant was transferred to the Community Corrections Center in Anchorage, Alaska.

On August 22, 2005, Stuart left the Community Corrections Center without permission and failed to return.

On August 26, 2006, Stuart was arrested and charged in case 3:05-CR-00090-JWS, with Escape in violation of 18 U.S.C. 751 (a). Stuart was returned to a U.S. Bureau of Prisons institution to complete her custodial sentence in A03-0171-16-CR (JMF).

On February 24, 2006, Stuart was sentenced in 3:05-CR-00090-JWS, to five years probation with a special condition of four months home confinement with electronic monitoring.

On July 31, 2006, the defendant was released from the custody of the U.S. Bureau of Prisons to live with her mother in Juneau, Alaska.

On August 3, 2006, the probation officer conducted a home visit at Stuart's residence and read, reviewed, and signed conditions of supervision. The probation officer also told Stuart that she would participate in the random drug testing program and provided instructions for the program. Stuart and her mother told the probation officer that they would need to have the telephone company install a second phone line for the electronic monitoring and they would

*STUART, Tara*
*Declaration in Support of Supplemental Petition*

call the probation officer when the second line had been installed.

On August 4, 2006, Stuart submitted to drug testing at her residence which field tested positive for the presence of methamphetamine and THC. The defendant denied using any illegal drugs.

On August 23, 2006, U.S. Probation Officer Travis Lyons, traveled to Juneau, Alaska, and installed the electronic monitoring equipment to accompany the home confinement. PO Lyons read, reviewed, and signed conditions of home confinement/electronic monitoring with Stuart. The defendant was placed on a curfew schedule which allowed her to be out of the house to look for employment from 8:00 am to 6:00 pm.

On August 25, 2006, Stuart called the probation officer and advised that she had obtained employment at the Wild Spice Restaurant and would be working 8:30am to approximately 3:30pm, Monday through Saturday, every week. No adjustments were made to the defendant's curfew schedule at this time except that Sunday would be a day Stuart would be required to remain at her residence.

On September 18, 2006, Stuart advised the probation officer that she works at the Wild Spice Restaurant 8:30 am to 3:30 pm and then walks across the street to the Subway Restaurant and works 4:00 pm until 10:30 pm. Stuart told the probation officer that she uses the city bus to and from her residence which could not get her home earlier than 11:45 pm. Stuart stated that she worked both jobs Monday through Saturday. The probation officer reminded Stuart of the punitive aspects of the home confinement program and directed the defendant to adjust her work schedule to get off work by 9:00 pm and home by 10:30 pm.

On September 20, 2006, the defendant failed to report for drug testing as required.

On September 22, 2006, the probation officer received a notification of schedule violation from the electronic monitoring website indicating that on September 21, 2006, Stuart's curfew began at 10:30 pm but that she did not return to her residence until 1:20 am on September 22, 2006.

On September 25, 2006, the probation officer called the defendant early in the morning before she left for work and reprimanded her for violating her curfew schedule. Stuart was again directed to follow the curfew schedule.

On September 27, 2006, the defendant returned one hour late for her curfew schedule.

On October 2, 2006, the defendant returned one hour late for her curfew schedule.

2

*STUART, Tara*
*Declaration in Support of Supplemental Petition*

On October 4, 2006, the probation officer called the defendant at her employment at the Wild Spice Restaurant and an unknown male advised that Stuart was not working this date.

On October 4, 2006, the probation officer called Stuart at home to inquire as to why she was not working today. Stuart said that she had to pick her husband up from the airport at 11:00 am and take him to the Sleep Clinic at 8:00 pm that night. Stuart was reprimanded for abusing her curfew schedule in that she only had permission to go to work and home. Stuart was advised that if she was not at work she was to be at home.

On October 4, 2006, the probation officer reprimanded Stuart for being one hour late on September 27, 2006, and thirty minutes late on October 2, 2006.

On October 13, 2006, Stuart failed to report for drug testing as required.

On October 16, 2006, Stuart failed to report for drug testing as required.

On October 17, 2006, the probation officer received notification that Stuart was 30 minutes late for her curfew schedule.

On October 19, 2006, the probation officer called Stuart at her Subway employment and inquired as to the tardy curfew, failing to report for drug testing, and incomplete Monthly Supervision Reports. Stuart told the probation officer that she was getting home as soon as the bus system could get her home and that sometimes the buses ran late. The probation officer told Stuart to take an earlier bus if needed and to be home by 10:30pm.

On October 30, 2006, the probation officer received a telephone call from Wade Bryson, owner of Subway where the defendant worked. Mr. Bryson said that the defendant was working on October 27, 2006 with a store manager until 6:00pm. The store manager balanced the cash register till and left the defendant to work and close the store by herself. The following morning another store manager opened the store, counted the till and reported to Mr. Bryson that the till was $280 short. Mr. Bryson reported that both store managers have worked for him for several years and were reliable. Mr. Bryson checked the last shift the defendant worked and found that the till was $40 short. Mr. Bryson filed a police report.

Mr. Bryson told the probation officer that when Stuart started employment, she worked at least four nights a week in training. Stuart then began to have problems with remembering to do everything required to close the store at night. Bryson said that Stuart started calling in sick several times a week and over the previous month and a half, Stuart averaged only two to three shifts a week and closed the store at 8:00pm.

Mr. Bryson also told the probation officer that people in the community have told him that the defendant has been seen drinking to excess in the bars. Additionally, Mr. Bryson said that on Wednesday October 25, 2006, the defendant was a passenger in a car with a friend "Moni" who was arrested for DWI and the car was impounded.

On October 31, 2006, the probation officer called Stuart early in the morning before she went to work. Although Stuart did not initially volunteer any information, she eventually told the probation officer that she was in a car with a friend, Moni, they were stopped by the police and Moni "got a DUI". Stuart said she did not know "Moni's" last name and that "Moni" was not a felon.

The probation officer asked Stuart repeatedly if there was anything she needed to tell the probation officer. Stuart answered in the negative. The probation officer told Stuart that her "wings were clipped". Stuart was told that the probation officer knew that she had only been working two to three shifts a week at Subway and that she was going to the bars at night. Stuart was told that the probation officer knew that she has been lying to the probation officer regarding the work and bus schedule. Again reminded Stuart that the home confinement program allowed the defendant to serve a prison sentence in the community and that for the short duration her activities are limited to work and home. Stuart had nothing to say to the probation officer regarding her violations. Stuart was told that the probation officer was going out of town and upon return would travel to Juneau to personally meet with her regarding the violations. Stuart was told her home confinement scheduled will change for her to return home at 4:00pm every day and not to miss any work unless there was a serious emergency.

On November 11, 2006, the probation officer traveled to Juneau and went to visit Stuart at the Wild Spice Restaurant where she worked. The probation officer spoke with the manager, Toby Clark who advised that Stuart had been fired on November 2, 2006. Mr. Clark explained that the last shift the defendant worked she was the only person who access to the till which later was determined to be missing $25. Stuart never advised the probation officer of the termination of this employment.

On November 15, 2006, the probation officer traveled to Juneau and conducted an unannounced home visit at Stuart's residence. The probation officer gave the defendant an opportunity to tell the probation officer any necessary information and Stuart had nothing to say except that she had a new job.. The probation officer directed Stuart to retrieve a copy of her judgment and conditions of supervision were reviewed as well as the violations.

The probation officer reviewed standard condition of supervision number 6 regarding 10 days advance notification to the probation officer regarding any changes in employment. Stuart indicated that she understood the condition. The probation officer reviewed the fact that Stuart

4

*STUART, Tara*
*Declaration in Support of Supplemental Petition*

had been fired from two jobs and started a new job, all without notification to the probation officer. Stuart offered no response.

The probation officer reviewed standard condition number 3 regarding truthful statements and following the directions of the probation officer in addition to the special condition regarding the home confinement/electronic monitoring program. The probation officer reminded Stuart she only had permission to go to work and drug testing, no where else. Stuart had told the probation officer that she worked Monday through Saturday starting at the Wild Spice Restaurant at 10:00 am, finishing at Subway at 9:00 pm, and arriving at home by city bus by 10:30 pm. Stuart was told that the probation officer knew that she called in sick frequently to both jobs and was eventually fired from both jobs and that Stuart had been in the bars frequently drinking at night . The probation officer asked Stuart where she was when she was not at work and Stuart had no response.

Stuart was advised that due to her violations, and her inability to comply with the home confinement/electronic monitoring program there would be adverse action. Stuart was advised of the following options: the probation officer could file a Petition to Revoke and request prison time if Stuart thought she was unable to withstand supervision in the community; the probation officer could file a Petition to Revoke and request other options from the Court, or the defendant could agree to a modification of conditions which required Stuart to basically "re-do" the home confinement/electronic monitoring program which she failed to comply with. Stuart advised the probation officer that she did not want to go back to Court or prison and would repeat the home confinement/electronic program. Stuart assured the probation officer that she would comply with the rules of the program this time. The probation officer told Stuart that she would return to Juneau in approximately 30 days and have Stuart sign the necessary paperwork for the modification. During the 30 day period Stuart would need to demonstrate that she was serious about not returning to Court or prison by adhering to the program rules with no violations.

Stuart advised the probation officer that she was working as a receptionist at Salon 22-11 Monday through Friday 10:00 am to 5:00 pm. The probation officer placed Stuart on a curfew allowing her to be out of the residence from 9:00 am to 6:00 pm and "locked down" on Saturday and Sunday. Additionally, Stuart was directed to call Gastineau Human Services and schedule an appointment to begin her substance abuse treatment.

On December 4, 2006, the probation officer received notification that Stuart was late returning to her residence at 6:38pm on December 1, 2006, and leaving her residence on December 2, 2006, at 11:30pm and returning at 12:32am.

On December 8, 2006, the probation officer traveled to Juneau met Stuart at her employment

5

*STUART, Tara*
*Declaration in Support of Supplemental Petition*

and transported her to Tongass Substance Screening. Stuart submitted to drug testing and DNA collection. Stuart told the probation officer the reason for her tardiness on December 1 was because the bus system was running late and on December 2 she went outside and shoveled the driveway for her mother. Stuart also signed the waiver to modify her conditions of supervision to include an additional four months of home confinement. Stuart was again directed to contact Gastineau Human Services and make an appointment to begin her substance abuse treatment.

On December 14, 2006, the probation officer traveled to Juneau and conducted an unannounced visit to Stuart's employment at Studio 22-11. The probation officer did not observe Stuart in the receptionist area and asked a hair stylist of Stuart whereabouts. The hair stylist advised the probation officer that Stuart had been fired on December 11, 2006. The manager, Sandra Brown was not available. Stuart failed to advise the probation officer of the termination of this employment.

On December 14, 2006, the probation officer called Stuart on her cell phone and left a voicemail requesting a return call. The probation officer conducted two home visits, one in the afternoon and one in the evening. The defendant's brother answered the door and advised the probation officer that Stuart was not home, was probably out with her friend Mona, and provided Mona's cell phone number. The probation officer called Mona's cell phone and left a message for Stuart to return the call.

On December 15, 2006, the probation officer called Stuart's cell phone but there was no answer or voicemail available. The probation officer again conducted an unannounced home visit to Stuart's residence in the afternoon. Stuart's brother answered the door and said that Stuart did not come home the previous night and he did not know where she was.

On December 15, 2006, Betty Tompkins from Gastineau Human Services left a voicemail for the probation officer advising that she had not yet heard from Stuart to schedule an appointment to begin substance abuse treatment.

On December 18, 2006, the probation officer received a voicemail from the defendant's mother, Kim Netling, advising that she is concerned about her daughter as she has not seen Stuart in a while and does not know what to do with the electronic monitoring equipment. Ms. Netling said that she could only be reached in the evening hours at home as she had just started a new job.

On December 20, 2006, the probation officer called Sandra Brown, the manager of Salon 22-11. Ms. Brown confirmed that Stuart was fired on December 11 because Stuart was never at work. Ms. Brown explained that Stuart was always leaving work early or calling in sick.

*STUART, Tara*
*Declaration in Support of Supplemental Petition*

Additionally, Brown found that sometimes the till was short and missing money. Ms. Brown said that she is familiar with Stuart's friend Mona and looked in the appointment book and found Mona's last name was Wigg. Ms. Brown said that Stuart was always driving Mona's car.

On December 21, 2006, the probation officer called Kim Netling. Ms. Netling explained that Stuart was having an affair with another woman, Romana Wigg and that every night they would sit outside Stuart's residence drinking. Ms. Netling said that Stuart was getting drunk frequently, that Stuart was a sloppy drunk, and that she would spill wine all over her living room. Ms. Netling said that the week of December 11, 2006, she told Stuart that she could not handle the drinking and lifestyle and that if Stuart was drinking not to bother coming home.

Ms. Netling advised the probation officer that on December 13, 2006, Stuart came home around 9:00pm and sat in the driveway with Mona. Ms. Netling told her son to go out and tell Stuart that if she is drinking not to bother coming in the house. That was the last time Ms. Netling saw the defendant. Ms. Netling said that the defendant left all of her personal belongings and has not returned for them, including her medication. Ms. Netling said she believed Stuart was staying with Mona who is a felon.

On December 28, 2006, the probation officer received a copy of an Incident Report regarding the arrest of Ramona Wigg for DWI which indicated that Stuart was a passenger in the vehicle.

On December 29, 2006, the probation officer conducted a criminal history check on Ramona Wigg and determined that Ms. Wigg was in fact convicted of a felony in 2002 to wit: Misconduct Involving a Controlled Substance in the Third Degree. Wigg was sentenced to two years imprisonment with one suspended, three years probation, and ordered to pay a fine of $4,000.

Stuart has failed to comply with the terms of her home confinement/electronic monitoring program which would have terminated on December 22, 2006. Stuart has failed to advise the probation officer of any changes in her employment. Stuart has failed to report for drug testing and treatment as required. Stuart has associated with a felon without permission of the probation officer or Court. Stuart has lied to the probation officer.

Based on the above facts, the Court issued a warrant for Stuart's arrest on January 3, 2007.

**FACTS for the SUPPLEMENTAL PETITION** (Allegations 7, 8, and 9)

On January 17, 2007, the offender was arrested in Juneau, Alaska.

*STUART, Tara*
*Declaration in Support of Supplemental Petition*

On January 18, 2007, the offender appeared before the Honorable Philip M. Pallenberg, U.S. Magistrate Judge in Juneau, Alaska. The Public Defender was appointed to represent Stuart, who was detained pending further proceedings.

On January 24, 2007, Magistrate Judge Pallenberg issued a temporary detention order.

On February 7, 2007, the defendant appeared before Magistrate Judge Pallenberg for an Evidentiary and Detention hearing. A resolution of the case was proposed to the Court and the defendant remained detained pending the location of a suitable release residence for the defendant.

On February 9, 2007, the defendant appeared before Magistrate Judge Pallenberg, who ordered the defendant released to the residence of Brenda Reeves. At the request of the parties, the Court held the Evidentiary hearing in abeyance for 90 days to allow the defendant a chance to demonstrate a willingness to abide by the conditions of supervision. The defendant was advised by the probation officer not to associate with Ramona Wigg, a convicted felon.

On March 8, 2007, U.S. Probation Officers traveled to the Juneau residence of Brenda Reeves but could not locate the defendant. They then traveled to the residence of Ramona Wigg, 2895 Mendenhall Loop, #68. As they were approaching the residence of Wigg, they observed the defendant inside and proceeded to and knocked on the door. After several minutes, Wigg answered the door and then closed it saying she would be back in a minute. Several minutes after that, Wigg came out of the residence and briefly spoke to the officer before departing the area. The officers, who had summoned a Juneau Police Officer approached the residence a second time and Officer Barnes announced her presence and the Juneau Police Officer announced his presence. The defendant was seen sitting on the couch at that time and then was seen moving to a back bedroom. The defendant never did answer the door and therefore failed to permit the officers to visit her at Wigg's residence.

Executed this 9th day of March, 2007, at Anchorage, Alaska, in conformance with the provisions of 28 U.S.C. § 1746.

I declare, under penalty of perjury, that the foregoing is true and correct, except those matters stated upon information and belief, and as to those matters, I believe them to be true.

**REDACTED SIGNATURE**

*for* Mary Frances Barnes
U.S. Probation Officer

8